# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOSEPH JONES, )
)
Plaintiff, ) Civil Action No. 11-0816
)
v. )
) Magistrate Judge Cynthia Reed Eddy
BEAVER COUNTY JAIL; *ET AL.*, )
Defendants. )
)

## MEMORANDUM OPINION AND ORDER[1]

Plaintiff filed a civil rights complaint in this Court on June 20, 2011. On May 11, 2012, he filed an Amended Complaint (ECF No. 45). On March 27, 2012, Defendants filed a Motion to Dismiss (ECF No. 21) and a Brief in Support (ECF No. 22). On March 29, 2012, this Court issued a four-page Order for Plaintiff to respond to the pending motion to dismiss (ECF No. 23). That Order gave Plaintiff the opportunity to file an Amended Complaint with respect to the deficiencies set forth in the pending motion to dismiss as required by Third Circuit precedent. *See* Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). Plaintiff filed an Amended Complaint on June 18, 2012 (ECF no. 30), thus mooting the pending motion to dismiss.

On June 29, 2012, Defendants filed a Motion to Dismiss the Amended Complaint (ECF No. 31) along with a Brief in support thereof (ECF No. 32). On July 2, 2012, the Court ordered Plaintiff to file a

---

1. The parties consented to jurisdiction by a United States Magistrate Judge. *See* ECF Nos. 10 and 38. *See also* 28 U.S.C. § 636(c)(1).

1

response to the pending motion. Plaintiff filed his Response on September 20, 2012. The pending motion to dismiss is ripe for disposition by this Court.

For the reasons set forth below, Defendants' Motion will be granted. Because Plaintiff previously was informed that his original complaint was deficient and was given an opportunity to cure that deficiency by filing an amended complaint, this Court is not required to provide further leave to amend. *See* Shelley v. Patrick 481 F. App'x 34, 36 (3d Cir. 2012).

### A. Standard of Review

Presently pending before the Court is Defendants' Motion to Dismiss. A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. In deciding this motion, the court must read the complaint in the light most favorable to the plaintiff and all well-pleaded, material allegations in the complaint must be taken as true. Estelle v. Gamble, 429 U.S. 97 (1976). The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn, 373 U.S. 746, 753 n. 6 (1963).

A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v.Twombly, 550 U.S. 554, 556 (2007) (rejecting the traditional 12(b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). "Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp., 550 U.S. at 555. *See also* Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (holding that, while the Complaint need not contain detailed factual allegations, it must contain more than a "formulaic recitation of the elements" of a constitutional claim and must state a claim that is plausible on its face) (quoting Bell Atl. Corp. v. Twombly, 550 U.S.

2

544 (2007) and providing further guidance on the standard set forth therein).

Courts generally consider the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. Pension Benefit Guar. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). Factual allegations within documents described or identified in the complaint also may be considered if the plaintiff's claims are based upon those documents. *Id.* (citations omitted). In addition, a district court may consider indisputably authentic documents without converting a motion to dismiss into a motion for summary judgment. Spruill v. Gillis, 372 F.3d 218, 223 (3d Cir. 2004); Lum v. Bank of America, 361 F.3d 217, 222 (3d Cir. 2004) (in resolving a motion to dismiss pursuant to Rule 12(b)(6), a court generally should consider "the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.").

A court must employ less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972). In a § 1983 action, the court must liberally construe the *pro se* litigant's pleadings and "apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name." Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir.2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247–48 (3d Cir.1999)). *See also* Nami v. Fauver, 82 F.3d 63, 65 (3d Cir.1996) ("Since this is a § 1983 action, the [*pro se*] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting Higgins, 293 F.3d at 688). Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *See, e.g.,* Taylor v. Books A Million, Inc., 296 F.3d 376, 378, (5th Cir. 2002); Riddle v. Mondragon, 83 F.3d 1197, 2102 (10th Cir. 1996).

3

## B. Plaintiff's Allegations

Plaintiff, a state prisoner currently housed at the State Correctional Institution at Greensburg, filed this *pro se* civil rights action complaining about the conditions of confinement during his temporary stay at the Beaver County Jail (BCJ). He seeks money damages and injunctive relief for alleged violations of his First, Fourth, Eighth, and Fourteenth Amendment rights due to alleged inhumane living conditions, denial of his religious meals, denial of access to the courts, and denial of equal protection. At all times material to this lawsuit, Plaintiff was a state inmate housed at the BCJ. The relevant allegations of fact in the Amended Complaint are as follows.

First, Plaintiff complains that some inmates in some housing units were allowed to eat meals in the dayroom while inmates in other housing units were required to eat their meals in their cells. He further claims that the law requires that inmates eat at least fifteen feet from a toilet. On January 25, 2012, Plaintiff submitted a request slip concerning this issue, which provides as follows.

> I would like to know why it is that we have to eat our meals in our cell but B-Pod & Work Release eat out on the pod what makes them pod different then the rest of the pods beside they are workers plus no the hole pod is workers. [sic]

ECF No. 30-1, p. 1. Deputy Warden Steele-Smith responded that "The policy and procedure of this facility allows for B-Pod and Work Release to eat out of their cells because they are dormitory style cells and the people on the pods have earned their way to those pods." Plaintiff claims that she "misrepresented the facts" because other state and federal inmates go directly to pods where inmates can eat in the dayroom. Warden Schouppe told him it was because other inmates had different security levels. Plaintiff claims that, because he had been transferred from SCI-Greensburg to a county jail, he was, by definition, a low security risk.

4

On February 12, 2012, Plaintiff filed a grievance on this issue while he was in the Restrictive Housing Unit asking why five out of the eight pods had to eat their meals in their cells two to three feet from a toilet (ECF No. 30-1, p.2). On February 14, 2012, he received the following response.

> Classification, Policy, and procedure dictate the rules for the pods. Inmates with a lower security clearance are provided more privileges. If you are eating 2 feet from your toilet, it is because you choose to do so, not because you are forced to.

Plaintiff unsuccessfully appealed this response alleging that "this is my first time in RHU and by law an inmate is to eat 15 feet away from a toilet." (ECF No. 30-1, p. 3).

Second, Plaintiff complains about the food. In this regard, on December 5, 2011, Plaintiff sent a request slip to medical that provides as follows.

> It's not a dislike of food I just don't eat lunch meat or peanut butter I don't eat it on the streets or up state and plus up state they don't serve lunch meat 4 to 5 days a week and on top of that they have a [unintelligible] line that I can go to if I don't eat certain food but this facility don't have that and its my religion cause I don't eat red meat or pork I'm not trying to cause a problem but[.] [sic].

ECF No. 30-1 at p. 4. He received a response that states "if this request is for a religious reason, you have to submit a request to the chaplain, since medical takes care of dietary changes for medical purposes only." On January 12, 2012 Plaintiff submitted a similar request slip to the deputy warden.

> Ms. C. Steele-Smith you must miss understood what I said in my last request I was sayin that I don/t eat beef or lunch meat and bein that I can/t trade or give or give or sell my trays what am I suppose to eat cause I or my family don/t have money to spend on commissary every week. [sic]

ECF No. 30-1, p. 5. He received a response that "[w]e send out the required meal food unless you have a medical reason not to eat certain food there is no way we are going to make substitutions."

5

Third, Plaintiff complains about the cleanliness of nail clippers. On January 25, 2012, he sent the following request slip.

> I would like to know if we can get some sanitation for the nail clippers. I ask Lt. White and she told me to run hot water over them. Hot water don't kill HIV or any other disease so is it possible that we can get some sanitation for the nail clipper.

ECF No. 30-1, p. 6. This request was referred to the medical department.

Fourth, Plaintiff complains about the lack of shower curtain. Plaintiff submitted a Grievance dated February 12, 2012, which provides as follows.

> I would like to know why there is no shower curtains in the RHU showers and the showers right by the bubble so that cos male/female can look right in at the inmates taking a shower. [sic]

ECF No. 30-1, p.7. He received a response stating: "[t]he shower curtain became a security issue. This subject was addressed in Federal Court and the County was in compliance with this issue and not in violation." Plaintiff unsuccessfully appealed claiming that the lack of shower curtains violated his rights as protected by the Fourth Amendment.

Fifth, plaintiff complains that a night light was cruel and unusual (ECF No. 30-1, p. 8). In response to his grievance, Plaintiff was informed that it was a jail policy.

Sixth, Plaintiff complains that he was unable to talk to the Court concerning custody of his son. Plaintiff filed an inmate request form and was told that the Court must call the jail and schedule the call (ECF No. 30-1, p. 9).

Seventh, Plaintiff complains that he was denied access to the courts. In this regard, on March 28, 2011, Plaintiff filed an inmate request for use of the law library, forms, and help in preparing some legal forms (ECF No. 30-1, p. 10). Plaintiff received the following response.

6

Which forms are you requesting as I have a few. There are also forms on the computer. We do not have anyone who can help you but it is self-explanatory.

On April 3, 2011, Plaintiff responded that he needed the law library, some PCRA forms and sentence modification forms (ECF No. 30-1, p. 11). In response, Plaintiff was given a PCRA form and was told that the law library computer would be on the Pod that week. He was further informed that additional copies of the PCRA form were available to purchase and that the jail did not have any sentence modification forms. Public Records indicate that Plaintiff filed a PCRA on May 9, 2011, counsel was appointed to represent him in that proceeding, which currently is pending in the Court of Common Pleas of Beaver County.

On December 6, 2011, Plaintiff wrote another inmate request asking for the law library cart because he was working on two open cases (ECF No. 30-1, p. 12). In response, he was told that the warden was "working on fixing the law library."

### C. Liability under 42 U.S.C. § 1983

Plaintiff seeks to assert liability against Defendants pursuant to the Civil Rights Act, 42 U.S.C. § 1983. To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42 (1988); Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-331 (1986).

There is no question that the Defendants were acting under color of state law with respect to the actions alleged in the Second Amended Complaint. Therefore, the issue is whether Plaintiff has alleged a violation of any right under federal law. His claims are addressed below.

7

D. First Amendment

Plaintiff makes several assertions that Defendants violated his rights as secured by the First Amendment of the United States Constitution, which provides as follows.

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

U.S. Const. amend. I. Specifically, Plaintiff asserts Defendants violated his First Amendment rights by: failing to provide him with vegetarian meals; failing to allow him to call the Court in connection with his child custody case; and failing to provide him adequate access to the courts.

1. Free Exercise

Plaintiff claims that the prison failed to provide him with vegetarian meals, which violated his religious rights. The Supreme Court has recognized that the First Amendment guarantees that all prisoners must be afforded reasonable opportunities to exercise their religious freedom. Cruz v. Beto, 405 U.S. 319, 322 n. 2 (1972). *See also* O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) ("Inmates clearly retain protections afforded by the First Amendment, ... including its directive that no law shall prohibit the free exercise of religion.") (citations omitted). However, in order to state a violation of the right to exercise one's religion, a plaintiff must allege a "substantial burden" on the exercise. *See, e.g.*, Thomas v. Review Bd., 450 U.S. 707, 718 (1981); Wisconsin v. Yoder, 406 U.S. 205, 218 (1972). Moreover, although inmates retain certain protections afforded by the First Amendment, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Shabazz, 482 U.S. at 348 (quotations omitted). While the federal courts must take cognizance of valid

constitutional claims of prison inmates, the Supreme Court repeatedly has cautioned that the task of prison administration has been committed to the responsibility of the legislative and executive branches of government; federal courts should be reluctant to second guess these authorities. *See, e.g.*, Turner v. Safley, 482 U.S. 78, 84 (1987); Shabazz, 482 U.S. at 353.

A prison's failure to provide meals that comply with inmates' religious dietary restrictions can give rise to constitutional claims. *See* Williams v. Morton, 343 F.3d 212, 215–16 (3d Cir. 2003). Here, however, Plaintiff's Amended Complaint does not state a claim upon which relief may be granted on the basis of the Jail's refusal to provide vegetarian meals to Plaintiff. Nowhere in his pleadings does Plaintiff identify any religious belief that required him to eat only vegetarian meals. When he first filed his grievance with the medical department, he was informed that he must address his request to the chaplain. ECF No. 30-1 at p. 4. It does not appear that Plaintiff ever did so. Instead, he sent a similar request to the deputy warden which did not identify any religious need for a vegetarian meal. ECF No. 30-1 at p. 5. Accordingly, he has failed to set forth a basis for relief for a violation of his free exercise rights and the Court must dismiss his claims. *Accord* Adekoya v. Chertoff, 431 F. App'x 85, 88 (3d Cir. 2011) (agreeing with the District Court that prisoner's allegations were insufficient to pass muster under Iqbal as he failed to make out a First Amendment claim).

2. Free Speech - Telephone

Prisoners have a First Amendment right to communicate with people outside prison walls and a telephone provides a means of exercising this right. Almahdi v. Ashcroft, 310 F. App'x. 519, 522 (3d Cir. 2009) (quoting Valdez v. Rosenbaum, 302 F.3d 1039, 1048 (9th Cir. 2002)). This right is not unlimited and reasonable restrictions on telephone privileges do not violate First Amendment rights. *Id.*

9

*See also* Cook v. Hills, 3 F. App'x 393 (6th Cir. 2001); Gilday v. Dubois, 124 F.3d 277 (1st Cir. 1997); Washington v. Reno, 35 F.3d 1093, 1100 (6th Cir. 1994) (noting that a prisoner's right to telephone access is subject to rational limitations in the face of legitimate security interests of the penal institution) (internal quotation omitted); Strandberg v. City of Helena, 791 F.2d 744, 747 (9th Cir. 1986). The use of telephones by prisoners obviously implicates concerns about prison security and such concerns are preeminent. Thorne v. Jones, 765 F.2d 1270, 1275 (5th Cir. 1985) (citing Block v. Rutherford, 468 U.S. 576, 589 (1984)).

Plaintiff claims that he was unable to call the Court concerning a child custody suit concerning custody of his son. Specifically, Plaintiff was told that the Court must call the jail and schedule the call (ECF No. 30-1, p. 9). Regulations limiting telephone use by inmates routinely are sustained as reasonable. *See, e.g.*, Pope v. Hightower, 101 F.3d 1382, 1384-85 (11th Cir. 1996). Moreover, Plaintiff makes no assertion that he lacked alternative means of communicating with the Court, *e.g.*, he could have posted a letter to the court. Accordingly, the telephone restrictions did not violate the First Amendment. *Accord* Almahdi v. Ashcroft, 310 F. App'x 519, 522 (3d Cir. 2009).[2]

3.  Access to Courts

Plaintiff complains that the denial of the use of the law library at the BCJ denied his right to access the courts. The right of access to the courts is guaranteed by the First Amendment of the United States Constitution. In Bounds v. Smith, 430 U.S. 817, 828 (1977), the United States Supreme Court held "that the fundamental constitutional right of access to the courts requires prison authorities to assist

---

2. Nor does it amount to punishment under the Eighth Amendment because such requirement did not amount to a deprivation of basic human needs such as food, water or clothing. *See* Perez v. Federal Bureau of Prisons, 229 F. App'x 55 (3d Cir. 2007). And finally, such a restriction does not violate the Fourteenth Amendment as prisoners do not have a liberty interest in unfettered access to a telephone. *Id.*

inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." However, in <u>Lewis v. Casey</u>, 518 U.S. 343 (1996), the Supreme Court effectively repudiated much of its prior holding in <u>Bounds</u>. In <u>Lewis</u>, the Supreme Court held that <u>Bounds</u> did not recognize an independent right in prisoners to have an adequate law library; instead, it concerned the established right of access to the courts. <u>Lewis</u>, 518 U.S. at 351. Thus, the Lewis Court held that, in order to successfully challenge a denial of this right of access to the courts, it is not enough for an inmate to establish that the law library provided was inadequate or he was denied access either to the law library or to legal materials; rather, he must establish that such inadequacies in the library or in accessing legal materials caused him actual harm.

> Because Bounds did not create an abstract freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense. That would be the precise analog of the healthy inmate claiming constitutional violation because of the inadequacy of the prison infirmary [which claim would be rejected due to such healthy inmate lacking an actual injury so as to confer standing to bring suit]. Insofar as the right vindicated by Bounds is concerned, "meaningful access to the courts is the touchstone," [Bounds 430 U.S.] at 823 (internal quotation marks omitted) and the inmate must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance hindered his efforts to pursue a legal claim. He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable to even file a complaint.

<u>Lewis</u>, 518 U.S. at 351.

Moreover, <u>Lewis</u> requires that an inmate seeking to prove denial of access to courts prove that the claim that he was denied bringing was nonfrivolous. *See* <u>Lewis</u>, 518 U.S. at 353 n.3. Such a requirement is simply a functional result of requiring an "actual injury." If an inmate is denied access to

11

courts to bring a frivolous suit, he has simply not been injured, *i.e.*, he has suffered no prejudice. *See id.* ("Depriving someone of an arguable (though not yet established) claim inflicts actual injury because it deprives him of something of value -- arguable claims are settled, bought and sold. Depriving someone of a frivolous claim, on the other hand, deprives him of nothing at all....").

Furthermore, as the court in Lewis made clear, the constitutional right is only the right to be able to bring to a court's attention a grievance that the inmate had, it does not include the right to discover unconstitutional violations or to effectively litigate once in court.

> It must be acknowledged that several statements in Bounds went beyond the right of access recognized in the earlier cases on which it relied, which was a right to bring to court a grievance that the inmate wished to present. These statements appear to suggest that the state must enable a prisoner to discover grievances, and to litigate effectively once in court. These elaborations upon the right of access to the courts have no antecedent in our pre-Bounds cases, and we now disclaim them. To demand conferral of such sophisticated legal capabilities upon a mostly uneducated and indeed largely illiterate prison population is effectively to demand permanent provision of counsel, which we do not believe the Constitution requires.

Lewis, 518 U.S. at 354 (internal citations omitted).

In Christopher v. Harbury, 536 U.S. 403 (2002), the Supreme Court set forth specific criteria that a court must consider in determining whether a plaintiff has alleged a viable claim of right to access to the courts. Specifically, the Supreme Court held that, in order to state a claim for denial of access to courts, a party must identify all of the following in the complaint: 1) a non-frivolous, underlying claim: 2) the official acts frustrating the litigation; and 3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit. Christopher, 536 U.S. at 415. The Court explained that the first requirement mandated that the plaintiff specifically state in the complaint the underlying claim in accordance with the requirements of Rule 8(a) of the Federal Rules of Civil Procedure to the same

degree as if the underlying claim was being pursued independently. Christopher, 536 U.S. at 417. In this regard, the statement must be sufficiently specific to ensure that the district court can ascertain that the claim is not frivolous and that the "the 'arguable' nature of the underlying claim is more than hope." *Id.* The second requirement requires a Plaintiff to clearly allege in the Complaint the official acts that frustrated the underlying litigation. Third, a Plaintiff must specifically identify a remedy that may be awarded as recompense in a denial-of-access case that would not be available in any other future litigation. *Id.* at 414.

Here, Plaintiff has failed to identify any legal action he was unable to pursue as a result of Defendants' alleged actions. To the extent that he is alleging that he was unable to file a PCRA petition, Public Records indicate that Plaintiff filed a PCRA on May 9, 2011. Counsel has been appointed to represent him in that proceeding, which currently is pending in the Court of Common Pleas of Beaver County. Accordingly, Plaintiff has not established actual injury and Defendants are entitled to dismissal of this claim. *Accord* Dunbar v. Barone, Civil No. 12-1337, 2012 WL 2775024, 3 (3d Cir. July 10, 2012); Adekoya v. Chertoff, 431 F. App'x 85, 89 (3d Cir. 2011) (noting that prisoner did not specify the nature of any of his pending suits, and, more fundamentally, failed to allege that he suffered any prejudice because he could not access a law library); Tapp v. Proto, 404 F. App'x 563, 566 (3d Cir. 2010) (noting that despite prisoner's assertions that he was denied the use of a law library, he had filed an action in state court).

### E. Fourth Amendment

Plaintiff complains that the BCJ policy of no shower curtains in the RHU violates the Fourth Amendment, which provides as follows:

13

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

Plaintiff claims that the lack of a shower curtain violated his rights under the Fourth Amendment. The Fourth Amendment protects against unreasonable searches and seizures by a representative of the government. Hudson v. Palmer, 468 U.S. 517, 522-526, 528 n 8 (1984). Although the majority of the circuits agree that prisoners retain some limited right to privacy, the Supreme Court has yet to definitively resolve the issue of whether convicted prisoners retain any right of privacy protected under the Fourth Amendment. *See* Johnson v. Phelan, 69 F.3d 144 (7th Cir. 1995); Kent v. Johnson, 821 F.2d 1220, 1226 (6th Cir. 1987) (recognizing a limited Fourth Amendment right of prisoner to be free from observation of private bodily parts by guards of the opposite sex without penological justification).

In the case at bar, Plaintiff makes no allegation that members of the opposite sex actually observed him taking a shower. Moreover, even if female guards could have observed male inmates in the shower at the BCJ, no court has held that such practice alone violates the Fourth Amendment. *See, e.g.*, Somers v. Thurman, 109 F.3d 614 (9th Cir. 1997); Johnson v. Phelan, 69 F.3d 144 (7th Cir. 1995); Michenfelder v. Sumner, 860 F.2d 328, 334 (9th Cir. 1988); El-Amin v. Gluckstern, Civil No. 86-7016, 1986 WL 18275, 1 (4th Cir. 1986); Rogers v. Clark, Civil No. 94-0444E, 1996 WL 328218 (W.D.N.Y. June 11, 1996) (holding that a female corrections officer's glance at a showering male prisoner did not present a constitutional injury and that "[b]ashfulness is not a protectable fundamental right or liberty interest."). Accordingly, Defendants are entitled to dismissal of this claim.

### F. Eighth Amendment

Plaintiff further asserts liability under the Eighth Amendment, which provides as follows.

> Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

U.S. Const. amend. VIII.

The Eighth Amendment protects individuals against the infliction of "cruel and unusual punishments." This protection, enforced against the states through the Fourteenth Amendment, guarantees incarcerated persons humane conditions of confinement. In this regard, prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)). Prison conditions may amount to cruel and unusual punishment if they deprive inmates of the minimal civilized measure of life's necessities. Rhodes v. Chapman, 452 U.S. 337, 349 (1981). Notwithstanding, not every injury raises constitutional concerns. A prison official violates the Eighth Amendment only when two requirements are met. The inmate must show that: 1) he suffered a risk of "serious" harm; and 2) prison officials showed "deliberate indifference" to such risk. Farmer, 511 U.S. at 834.

The first element is satisfied when the alleged "punishment" is "objectively sufficiently serious." Id. In determining whether a prisoner has alleged a risk that is objectively serious, a court must consider not only the seriousness of the potential harm and the likelihood that the harm will actually occur, but evidence that unwilling exposure to that risk violates contemporary standards of decency. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate. Helling v. McKinney, 509 U.S. 25, 35 (1993).

The second criterion, deliberate indifference, requires an inmate to show that the prison official

had a sufficiently culpable state of mind. The Supreme Court clarified this deliberate indifference standard in Farmer as follows.

> We reject petitioner's invitation to adopt an objective test for deliberate indifference. We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement <u>unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference</u>. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. . . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Farmer, 511 U.S. at 837-838 (emphasis added).

Plaintiff alleges that the use of a night light and unsanitary nail clippers violated the Eighth Amendment prohibition against cruel and unusual punishment. Requiring inmates to live in constant illumination, under certain circumstances, may rise to the level of an Eighth Amendment violation. *See* Bacon v. Minner, Civil No. 06-3594, 2007 WL 1157138 (3d Cir. April 19, 2007) (citing Keenan v. Hall, 83 F.3d 1083, 1090-91 (9th Cir. 1996) (holding that an allegation that large florescent lights directly in front of and behind an inmate's cell shone into his cell 24 hours a day, so that his cell was constantly illuminated, and he had no way of telling night or day, and that this condition caused him grave sleeping problems and other mental and psychological problems was sufficient to state a claim of cruel and unusual punishment). Notwithstanding, continuous exposure to low wattage night time security lighting is permissible based on legitimate penological interests such as prison security concerns. *See, e.g*, Sims v. Piaza, 462 F. App'x 228 (3d Cir. 2012) ("Continuous lighting has been held to be permissible and

reasonable in the face of legitimate penological justifications, like the need for security and the need to monitor prisoners."); Chavarria v. Stacks, 102 F. App'x 433, 436-37 (5th Cir. 2004) (policy of constant illumination was reasonably related to the legitimate penological interest of guard security); O'Donnell v. Thomas, 826 F.2d 788, 790 (8th Cir. 1987) (continuous lighting in holding cell not unreasonable given security concern); King v. Frank, 371 F.Supp.2d 977, 984-85 (W.D. Wisc. 2005) (holding that constant exposure to a 9 watt fluorescent light which allows prison officials to observe inmates at night did not violate Eighth Amendment standards); Willis v. Terhune, 404 F.Supp.2d 1226, 1230-31 (E.D. Cal. 2005) (exposure to 24 hour 13 watt security bulb did not constitute cruel and unusual punishment in absence of evidence of grave sleeping problems or other harm).

Moreover, Plaintiff must allege a substantial injury-in-fact to make a claim for damages; his constitutional rights have no inherent monetary value. Memphis Cmty. Sch. Dist. v.. Stachura, 477 U.S. 299 (1986). Here, Plaintiff did not make any such allegation. Moreover, his complaint about the cleanliness of the nail clippers was referred to the medical department. Thus, Defendants are entitled to dismissal of Plaintiff's Eighth Amendment claims.

### G. Equal Protection

As a final matter, Plaintiff claims that Defendants violated his rights as protected by the Equal Protection Clause, which requires that all people similarly situated be treated alike. *See* City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). To bring a successful claim for a denial of equal protection, a plaintiff must prove the existence of purposeful discrimination. Chambers ex rel. Chambers v. School Dist. of Phila. Bd. of Educ., 587 F.3d 176, 196 (3d Cir. 2009)). Specifically, a plaintiff stating a claim under the Equal Protection Clause must allege that he has been treated

17

differently because of his membership in a suspect class or that he has been treated differently from similarly-situated others. Young v. New Sewickley Twp., 160 F. App'x. 263, 266 (3d Cir. 2005). In other words, a plaintiff must show that he was intentionally treated differently from others similarly situated and that there was no rational basis for such treatment. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 243 (3d Cir. 2008).

Plaintiff does not allege any facts showing that he was treated differently from similarly situated inmates or that there was no rational basis for his different treatment. Thus, his equal protections claims will be dismissed. *Accord* Carson v. Mulvihill, Civil No. 10-1470, 2012 WL 2878192, 7-8 (3d Cir. July 16, 2012); Hall v. Zickefoose, 448 F. App'x 184 (2011); Tennille v. Quintana, 443 F. App'x 670, 673 (3d Cir. 2011).

AND NOW, this 1st day of February, 2013;

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss (ECF No. 31) is **GRANTED**.

IT IS FURTHER ORDERED that the Clerk of Court mark this case **CLOSED**.

AND IT IS FURTHER ORDERED that, pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, Plaintiff has thirty (30) days to file a notice of appeal as provided by Rule 3 of the Federal Rules of Appellate Procedure, if he so desires.

Cynthia Reed Eddy
United States Magistrate Judge

Joseph Jones
JN7382
165 SCI Lane
Greensburg, PA 15601